IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>               Plaintiff,<br><br>    vs.<br><br>ELOY VARGAS MORALES,<br><br>               Defendant. | **8:17CR147**<br><br>**FINDINGS AND<br>RECOMMENDATION** |

This matter is before the Court on the Motion to Suppress the Fruits of an Unlawful Search and Seizure (Filing No. 27) filed by Defendant, Eloy Vargas Morales. Defendant filed a brief in support of the motion (Filing No. 28) and the government filed a brief in opposition (Filing No. 33).

The Court held an evidentiary hearing on the motion on February 13, 2018. Defendant was present with his attorney, James Martin Davis. The government was represented by Assistant United States Attorney, Thomas Kangior. Omaha Police Officers Nicholas Yarpe and Robert Branch, Jr. testified on behalf of the government. Defendant testified on his own behalf. The Court received into evidence Exhibits 1 and 2 offered by the government, and Exhibit 101 offered by Defendant. The Court also took judicial notice of Neb. Rev. Stat. § 60-6,161. A transcript (TR.) of the hearing was prepared and filed on February 26, 2018. (Filing No. 42). This matter is now fully submitted to the Court. For the following reasons, the undersigned magistrate judge recommends that Defendant's motion be denied.

## BACKGROUND

On March 14, 2017, Omaha Police Officers from the Gang Suppression and Narcotics Units began surveillance of a residence at 2325 North 48th Street after receiving information from a confidential informant (C/I) that a felony fugitive and methamphetamine or other narcotic activity might be taking place at the residence. (TR. 10, 18, 23, 34, 43-44). During his surveillance, Officer Branch[1] drove by the residence in an unmarked black Ford F-250 and

---

[1] Officer Branch has been employed as an officer with the Omaha Police Department (OPD) for 17 ½ years and is currently with the Narcotics Unit. (TR. 33).

noticed two males standing next to a red Ford F-150 parked in the driveway.  Officer Branch was unable to determine the identity of the individuals as he was driving.[2]  (TR. 46-48).  Officer Branch turned his vehicle around and set up a stationary surveillance of the residence for approximately an hour to an hour and a half.  (TR. 49-51).

Officer Branch testified that he did not observe anything unusual during his stationary surveillance, but he did observe the F-150 leaving the residence.  Officers suspected that the felony fugitive was in the truck.  (TR. 34, 52-53).  Officer Branch then observed Defendant, driving the F-150, fail to signal a right-hand turn from 48th Street onto Northwest Radial Highway.  (TR. 18, 35, 53, 63).  Officer Branch communicated his observation by portable radio to Detective Jordan Brandt, who was driving in a separate marked police vehicle.  Detective Brandt relayed the information to Officer Yarpe,[3] who was driving in an unmarked surveillance vehicle.  Detective Brandt and Officer Yarpe began following the F-150, and observed the F-150 drive past a residence just east of 50th Street and Erskine Street, then reverse into the driveway of the residence.  Detective Brandt conducted a traffic stop of the F-150 based on the information provided to him by Officer Branch.  (TR. 11-12, 22, 25, 35, 63).

Officer Yarpe approached the F-150 with his weapon drawn because he had information that one of the parties had a felony warrant, and because he thought the F-150 may flee since it had reversed into the driveway.   (TR. 13, 102).  Officer Yarpe testified that as Defendant exited the vehicle, a large amount of money and what appeared to be methamphetamine were protruding from the left inner pocket of Defendant's unzipped coat.  Officer Yarpe placed Defendant in handcuffs and contacted Officer Branch.  (TR. 13, 21, 26-29, 101).

Officer Yarpe searched Defendant's person and found $3,910 in U.S. currency and 77 grams of methamphetamine packaged in four separate plastic bags in Defendant's left inner coat pocket.  (TR. 14-15).  Because of the large amount of money and methamphetamine found in Defendant's coat pocket, Detective Brandt searched the F-150 for additional items related to drug dealing.  (TR. 14, 17).  A stolen motorcycle was found in the back of the F-150.  (TR. 29).

---

[2] Based on the C/I's information, at the time Officer Branch believed, but could not confirm, that the two individuals were the felony fugitive, David Roland, and Defendant.   (TR. 24, 46-48).  The two individuals later were confirmed to be Defendant and Roland. (TR. 56-57).

[3] Officer Yarpe has been employed with the OPD for 9 ½ years and is currently with the Gang Suppression Unit. (TR. 9).

Officer Branch placed Defendant in Branch's vehicle while the other officers searched the F-150. Officer Branch obtained Defendant's biographical information and explained to him the circumstances of his arrest. Officer Branch and Defendant conversed in English without difficulty. Defendant was calm but began to cry when Officer Branch told him that he was being arrested for possession with intent to distribute methamphetamine. (TR. 37).

After Defendant was arrested and taken to Central Headquarters, Officer Branch provided the OPD *Miranda* rights advisory form (Ex. 101) to Defendant in order to conduct an interview. Defendant did not agree to be interviewed. He did not ask for an attorney. (TR. 38, 107). Officer Branch then told Defendant that he had information regarding Defendant's access to a residence at 48th and Blondo streets and the existence of a camper at 19th and Arbor streets. Officer Branch requested Defendant's permission to search the residence and the camper without the necessity of obtaining a warrant. (TR. 38-39, 62, 106-107). Defendant agreed to the search of the camper at 19th and Arbor and signed an OPD Permission to Search form (Ex. 2) filled out by Officer Branch. Defendant was allowed to read the form and stated that he could read before signing the form. (TR. 39-40). Officer Branch and Defendant spoke in English without difficulty.[4] Officer Branch made no threats or promises and Defendant appeared calm throughout. (TR. 40, 93-94). Officer Branch transported Defendant to the camper's location to execute the search. Officers used a key provided by Defendant to gain entry to the camper. Officers found about 60 grams of methamphetamine in the camper. (TR. 41).

Defendant filed the instant motion to suppress "all evidence seized from the Defendant's person, property, motor vehicle, cell phone, and camper[.]"[5] (Filing No. 27).

## ANALYSIS

Defendant argues that the evidence in this case should be suppressed because it resulted from a traffic stop without probable cause, a search of his person, and the F-150 without a warrant or exception the warrant requirement, and a consensual search of the camper obtained

---

[4] Officer Branch had a Spanish-speaking Sergeant available to him if there had been any communication difficulties with Defendant. (TR. 108).

[5] Although Defendant asks to suppress evidence from his cell phone, his brief does not address this issue, nor was a search of Defendant's cell phone mentioned or otherwise addressed at any point during the hearing.

after he had invoked his right to remain silent.  (Filing Nos. 27, 28; TR. 8, 111, 115-117).  Each of these arguments is without merit, as explained below.

### I. Standing

First, although standing was not addressed at the hearing, the government did raise in its brief the issue of whether Defendant established "that he was in lawful possession of the truck he was driving and had any reasonable expectation of privacy in it."  (Filing No. 33 at p. 5).

"To establish standing, '[t]he defendant moving to suppress bears the burden of proving he had a legitimate expectation of privacy that was violated by the challenged search.'"  *United States v. Mosley*, 878 F.3d 246, 255 (8th Cir. 2017)(quoting *United States v. Muhammad*, 58 F.3d 353, 355 (8th Cir. 1995)).  "The defendant may not rely on 'positions the government has taken in the case' but must 'present evidence of his standing, or at least . . . point to specific evidence in the record which the government presented [that] established his standing.'"  *United States v. Maxwell*, 778 F.3d 719, 732 (8th Cir. 2015)(quoting *United States v. Zermeno*, 66 F.3d 1058, 1062 (9th Cir.1995)).

The undersigned is not convinced that Defendant met his burden to prove that he has standing to contest the search of the F-150.  Despite being on notice that standing was an issue, Defendant did not introduce evidence at the suppression hearing to establish his relationship to the property searched in this case.  See, e.g., *Maxwell*, 778 F.3d at 733 ("Despite the government advising at the start of the suppression hearing that standing was an issue, [the defendant] introduced no affirmative evidence supporting his claim that he lived at or otherwise had a sufficient interest in [the residence searched.]").  There is no evidence in record indicating whether Defendant was the registered owner of the F-150 or whether he was simply driving it (and, if he was only driving it, whether he had permission from its owner to use it).  See, e.g., *Mosley*, 878 F.3d at 255 ("In determining whether an individual has standing to challenge a vehicle search, 'ownership' and 'permission' play an important role . . . We have held that an individual lacked standing because 'he did not own the car, and the owner did not give him permission to use it.'").  Because Defendant did not meet his burden to prove he had a legitimate expectation of privacy in the F-150, the undersigned would recommend denying his motion to suppress with respect to evidence obtained from that search.  However, even assuming that Defendant did establish standing to contest the search, the undersigned nevertheless recommends

denial of his motion to suppress evidence obtained from the search of the F-150 for the additional reasons set forth below.

## II. The Traffic Stop

Defendant conceded in his brief that there was probable cause for the initial traffic stop. But, at the suppression hearing, his counsel stated that he was challenging the legality of the stop. (Filing No. 28; TR. 8).

"An officer has probable cause to conduct a traffic stop when he observes even a minor traffic violation. This is true even if a valid traffic stop is a pretext for other investigation." *United States v. Sallis*, 507 F.3d 646, 649 (8th Cir. 2007) (internal quotations omitted). "Once an officer has probable cause, the stop is objectively reasonable and any ulterior motivation on the officer's part is irrelevant." *United States v. Frasher*, 632 F.3d 450, 453 (8th Cir. 2011)(quoting *United States v. Arciniega*, 569 F.3d 394, 397 (8th Cir. 2009)). Under Nebraska law, a driver is required to give "[a] signal of intention to turn or move right or left . . . continuously during not less than the last one hundred feet traveled by the vehicle before turning." Neb. Rev. Stat. § 60-6,161(2). Failure to comply with this statute provides an officer with probable cause to stop a vehicle. See *United States v. Adler*, 590 F.3d 581, 584 (8th Cir. 2009).[6]

In this case, Officer Branch testified that he observed Defendant fail to signal a right-hand turn from 48th Street onto Northwest Radial Highway, and communicated this information to the other officers. Defendant testified he did use his right turn signal. (TR. 71). After observing the witnesses during their testimony, the undersigned finds that the officers' testimony was credible, and that Defendant's testimony was not credible. Defendant's testimony was self-serving and his explanation for backing into the driveway because the road was closed is unconvincing. (TR. 72). Defendant admitted he knew he was being followed by law enforcement. (TR. 71). It appears Defendant was attempting to evade police by backing into the driveway. Therefore, the undersigned disregards Defendant's testimony that he used his turn signal, and finds that Officer Branch's testimony is credible. Accordingly, Officer Branch's

---

[6] At the suppression hearing, defense counsel argued that Neb. Rev. Stat. § 60-6,161(2) only applies to drivers who are traveling, and not to drivers turning from a stop. (TR. 64). However, Defendant's position is contrary to the Eighth Circuit's interpretation of Neb. Rev. Stat. § 60-6,161(2), which the Court determined "requires drivers to signal 100 feet in advance of any turn, regardless of whether the vehicle will come to a complete stop before turning." *Adler*, 590 F.3d at 583.

observation of the traffic violation for failing to signal a turn provided probable cause to stop Defendant.[7]

### III. Warrantless Seizure, Arrest, and Search of Defendant's Person

"[O]nce a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures." *Pennsylvania v. Mimms*, 434 U.S. 106, 111 n. 6 (1977). After the F-150 was stopped, Defendant was ordered to step out of the vehicle, which was constitutionally permissible. See *Mimms*, 434 U.S. at 111 n. 6. The officers' approach of the F-150 with weapons drawn was also reasonable under the circumstances, considering the information they had that a felony fugitive was likely in the F-150, and because the F-150 had backed into a driveway unprompted leading officers to believe the driver might flee. See *United States v. Jones*, 759 F.2d 633, 638 (8th Cir. 1985)("An approach to a car by officers with guns drawn does not elevate an investigative stop into an arrest if the police action is reasonable under the circumstances. . . . A possibility that the suspect was armed or an attempt by the suspect to evade detention frequently is emphasized or even deemed essential to make a show of guns reasonable.").

According to Officer Yarpe's testimony, as soon as Defendant exited the F-150, a large amount of money and what appeared to be methamphetamine were visible protruding from the left inner pocket of Defendant's unzipped coat. Officer Yarpe seized the contraband without a warrant and also placed Defendant under arrest. "The plain-view exception allows officers to seize contraband or other evidence of a crime . . . without a warrant if they are lawfully in a position from which they view the object, the incriminating character of the object is immediately apparent, and the officers have a lawful right of access to the object." *United States v. Muhammad*, 604 F.3d 1022, 1027 (8th Cir. 2010)(citations omitted). "'Immediately apparent' in the Fourth Amendment context means that the officer performing the search has 'probable

---

[7] Furthermore, Officer Yarpe testified that Defendant "technically stopped on his own" by reversing the F-150 into a driveway, prior to the officers activating their lights. (TR. 30-31). Officer Yarpe testified that his partner activated his lights after Defendant stopped "unprompted," and that they did not block the driveway so that Defendant could have left the driveway. (TR. 30). Thus, it is questionable whether in fact a traffic stop actually occurred. See *United States v. Garcia*, 441 F.3d 596, 598 (8th Cir. 2006)(concluding officers did not make an investigatory stop where the defendant's vehicle was "never stopped by police" and parked and exited his vehicle with "no earlier contact or directive from law enforcement.").

cause to believe an item is incriminating.'" *Muhammad*, 604 F.3d at 1027 (quoting *United States v. Green*, 560 F.3d 853, 858 (8th Cir. 2006)).

In this case, Officer Yarpe was in a lawful position from which he saw the items in Defendant's coat pocket, and testified that from about two feet away, he saw in plain view the seized items without a search of Defendant's person.  Officer Yarpe testified that Defendant's coat was completely unzipped (TR. 26, 101), and that there was "so much weight" in the left coat pocket that Defendant's coat was hanging open, making the methamphetamine and cash visible. (TR. 27).  Defendant, however, testified that his jacket zipper was halfway up, and the inner zipper pocket "was closed all the way."  (TR. 91).  Defendant testified the money was in a "secret pocket" in his pants and that it was too small to fit both the money and the methamphetamine bag.  (TR. 77).  Again, the undersigned finds that Officer Yarpe's testimony was credible, and Defendant's self-serving testimony was not credible.  For example, on cross-examination, Defendant testified that he was "not saying that [the officers] are lying," but he did not have four bags of methamphetamine on him, and that all 77 grams/two and a half ounces of methamphetamine found on his person was for his "own consumption."  (TR. 86).  Defendant testified he works in roofing but can afford to pay for his roughly $1,000 a week methamphetamine habit.  (TR. 86, 88).  Defendant's testimony that the methamphetamine and money were not visible is not credible.  Defendant himself testified that two and a half ounces of methamphetamine is about the size of a softball. (TR. 90).  Officer Yarpe testified that the money in Defendant's pocket was folded over and about four to five inches wide.  (TR. 16).  Given the large size of these objects contained in a single pocket, Officer Yarpe's testimony is credible regarding the plain visibility of the items.

Officer Yarpe's testimony also established that the incriminating nature of the methamphetamine and cash was immediately apparent.  Officer Yarpe testified that he saw a "clear crystal substance," similar to an ice chip, in a clear bag protruding from Defendant's jacket pocket.  Officer Yarpe testified that he has encountered methamphetamine before, and knows that it is commonly packaged in clear plastic sandwich bags.  Officer Yarpe further testified that methamphetamine looks different from other contraband, such as cocaine, due to its "ice chip" appearance.  (TR. 14, 28-29).  Additionally, although cash " is not inherently incriminating," *Muhammad*, 604 F.3d at 1028, under the circumstances, officers had probable cause to believe the cash was evidence, due to its proximity to the methamphetamine and

because of the C/I tip that there was methamphetamine/drug transactions associated with the residence from which Defendant had recently left. (TR. 43). See, e.g., *United States v. Bustos-Torres*, 396 F.3d 935, 945 (8th Cir. 2005)(incriminating character of a wad of cash immediately apparent where officers saw the defendants leave the scene of a suspected drug buy in an area known for drug traffic). Accordingly, the warrantless seizure of the cash and methamphetamine found on Defendant's person was permissible by the plain view exception.

Probable cause existed for Defendant's subsequent warrantless arrest. Probable cause for a warrantless arrest exists "if the totality of the circumstances known to the officers" at the time of arrest is "sufficient to warrant a prudent person's belief that the suspect had committed or was committing an offense." *United States v. Chartier*, 772 F.3d 539, 545 (8th Cir. 2014). Officers clearly had probable cause to arrest Defendant after seeing on Defendant's person, in plain view, a clear crystal substance in a clear bag and a large wad of cash. Officer Yarpe was familiar with methamphetamine based on his training and experience, and also was aware of the C/I tip that narcotics transactions were associated with the house where Defendant had recently been. Officers were also permitted to search Defendant's person subsequent to his arrest. See *Chimel v. California*, 395 U.S. 752 (1969).

In consideration of the above, the undersigned recommends denying Defendant's motion to suppress evidence found from the search of his person.

### IV. Warrantless Search of Vehicle

As discussed above, the undersigned is not convinced Defendant has standing to contest the search of the F-150. Nevertheless, assuming that Defendant does have standing, the search of the F-150 was constitutionally permissible. Under the automobile exception to the warrant requirement, "police officers may conduct a warrantless search of a vehicle and containers within the vehicle whenever probable cause exists." *United States v. Brooks*, 715 F.3d 1069, 1075 (8th Cir. 2013). Probable cause to search an automobile "exists when there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Palega*, 556 F.3d 709, 714 (8th Cir. 2009). The automobile exception "authorizes a search of any area of the vehicle in which the evidence might be found." *United States v. Grooms*, 602 F.3d 939, 943 (8th Cir. 2010)(citing *United States v. Wells*, 347 F.3d 280, 287 (8th Cir. 2003)). Additionally,

officers may search a vehicle incident to arrest where "it is reasonable to believe the vehicle contains evidence of the offense of arrest." *Arizona v. Gant*, 556 U.S. 332, 346 (2009).

In this case, officers found dealer quantities of methamphetamine in four separate baggies on Defendant's person, as well as a large amount of cash. Under the circumstances, there was a fair probability that evidence of drug dealing would be found in the F-150 the Defendant was driving. See *Palega*, 556 F.3d at 714. Additionally, after Defendant's arrest, it was reasonable for officers to believe the F-150 Defendant was driving would contain additional evidence of drug dealing. See *Gant*, 556 U.S. at 346. Therefore, the undersigned recommends that Defendant's motion to suppress be denied as to evidence obtained from the search of the F-150.

### V. Search of the Camper

Defendant seeks suppression of any evidence found during the warrantless search of the camper because he did not voluntarily consent.[8] "Consent to search is one exception to the warrant requirement, and a warrantless search is valid if conducted pursuant to the knowing and voluntary consent of the person subject to a search." *United States v. Farnell*, 701 F.3d 256, 262-63 (8th Cir. 2012)(internal quotation marks omitted). The government has the burden to establish, by the preponderance of the evidence, that consent was voluntarily given. See *United States v. Arciniega*, 569 F.3d 394, 398 (8th Cir. 2009). Whether consent was voluntarily given is determined from the totality of the circumstances. See *Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973). Factors for the court to consider include:

> (1) the individual's age and mental ability; (2) whether the individual was intoxicated or under the influence of drugs; (3) whether the individual was informed of his *Miranda* rights; and (4) whether the individual was aware, through prior experience, of the protections that the legal system provides for suspected criminals. . . . It is also important to consider the environment in which an individual's consent is obtained, including (1) the length of the detention; (2) whether the police used threats, physical intimidation, or punishment to extract consent; (3) whether the police made promises or misrepresentations; (4) whether the individual was in custody or under arrest

---

[8] The undersigned is also not convinced that Defendant met his burden to prove that he has standing to contest the search of the camper. Other than defense counsel's references to "your camper" during his examination of Defendant, (TR. 93-94), it is unclear what Defendant's relationship to the camper is, such as whether he owned it or lived in it. However, because Defendant provided a key to law enforcement to unlock the camper, and because the consent form signed by Defendant indicates that he was "in control of the property" at 19th and Arbor, the undersigned will assume Defendant established a legitimate expectation of privacy in the camper, but nevertheless recommends denial of the motion to suppress for the additional reasons set forth herein. (Ex. 2; TR. 94).

when consent was given; (5) whether the consent was given in public or in a secluded location; and (6) whether the individual stood by silently or objected to the search.

*Arciniega*, 569 F.3d 394, 398 (internal citation omitted).

In obtaining Defendant's consent, Officer Branch made no threats or promises, and Defendant appeared calm throughout. Officer Branch and Defendant spoke in English without difficulty. Although Defendant was in custody, he had been informed of his *Miranda* rights. Additionally, Defendant appeared to know he could refuse consent, as he did not agree to consent to the search of his other residence. (TR. 40-41). Defendant signed a written Permission to Search form (Ex. 2), which he was permitted to read (and stated that he could read) before signing. Defendant accompanied Officer Branch to the camper for the search, and produced the key to the camper to officers to access the camper. At no time during the search did Defendant object to the search or attempt to revoke his consent. The totality of the circumstances show that Defendant voluntarily consented to the search of the camper. See *Schneckloth*, 412 U.S. at 227.

Finally, although he did not argue this point in his brief, at the hearing Defendant appeared to suggest that officers violated *Miranda* when they asked Defendant for his consent to the search of the camper after he invoked his right to remain silent. (TR. 82-84, 95-96). "Interrogation in the *Miranda* context refers to express questioning and to words or conduct that officers should know is 'reasonably likely to elicit an incriminating response from the suspect.'" *United States v. Briones*, 390 F.3d 610, 612 (8th Cir. 2004) (quoting *Rhode Island v. Innis*, 446 U.S. 291, 301, 297 (1980)). "Simply put, a consent to search is not an incriminating statement." *Cody v. Solem*, 755 F.2d 1323, 1330 (8th Cir. 1985). See also *United States v. McClellan*, 165 F.3d 535, 544 (7th Cir. 1999)("[A] request for consent to search is not an interrogation within the meaning of *Miranda* because the giving of such consent is not a self-incriminating statement."); *United States v. McCurdy*, 40 F.3d 1111, 1118 (10th Cir. 1994)("An officer's request to search a defendant's automobile does not constitute interrogation invoking a defendant's *Miranda* rights"). In consideration of the above, the undersigned recommends denying Defendant's motion to suppress evidence obtained from the camper.

For the foregoing reasons,

**IT IS HEREBY RECOMMENDED** to United States District Court Judge Robert F. Rossiter, Jr., that Defendant's Motion to Suppress the Fruits of an Unlawful Search and Seizure (Filing No. 27) be denied in its entirety.

Dated this 26th day of March, 2018.

BY THE COURT:

s/ Michael D. Nelson
United States Magistrate Judge

## ADMONITION

Pursuant to NECrimR 59.2, any objection to this Findings and Recommendation shall be filed with the Clerk of the Court within fourteen (14) days after being served with a copy of this Findings and Recommendation. Failure to timely object may constitute a waiver of any such objection. The brief in support of any objection shall be filed at the time of filing such objection. Failure to file a brief in support of any objection may be deemed an abandonment of the objection.